# F. E. MILLIS *v.* STATE.

[63 South. 344.]

1. CONTEMPT. *Appeal. Civil docket. Proceedings. Divorce. Refusal to pay alimony.*

   A proceeding for contempt against a husband for failing to pay alimony decreed by the court is a civil and not a criminal proceeding and on appeal the case should be entered on the civil docket.

2. SAME.

   Where on motion of the wife, a rule was granted by the chancellor citing the husband to appear and show cause why he should not be punished for contempt, for failing to pay alimony decreed by the court, the chancellor was not convinced that the husband had not wilfully, deliberately and contumaciously ignored the orders of the court, he had the right to sentence him to confinement in jail, unless he paid the alimony as directed.

APPEAL from the chancery court of Simpson county.
HON. R. E. SHEEHY, Chancellor.

F. E. Millis was imprisoned for contempt of court in failing to pay alimony and appeals.

The facts are fully stated in the opinion of the court.

*A. M. Edwards* and *Russell & Russell,* for appellant.

The first point we desire to call the court's attention to, is the one raised by the assistant attorney-general, in which he contends that this is a civil contempt and the punishment coercive in its nature, and for that reason the chief justice erred in granting the appeal under section 39, Code 1906. Our anwser to this proposition is, that the chief justice did not err in granting the appeal under this section, in fact section 39 is the only section that authorizes an appeal in contempt cases at all, and without this section we couldn't appeal, and certainly that was not the intention of the legislature when they en-

acted this section, that is to provide and authorize an appeal in criminal and not civil contempts, in fact under the code of Mississippi all contempts are made criminal, and punishable as such, as will be seen by reference to sections 560 and 999, Code 1906. We submit that the Indiana case cited by the attorney-general is not analogous to the one at bar, for the reason that we are governed by statute and it doesn't appear that the supreme court of Indiana was, and if it was, the laws of that state may be quite different from the laws of our state.

We earnestly contend that the very language of section 39 makes all contempts under the laws of our state criminal, the very fact the bonds therein provided for are required to be made payable to the state of Mississippi, and the appellant required to give an appearance bond, prove conclusively that they are criminal under our laws, and notwithstanding this fact, we contend that section 39 was designed, and in fact does apply, to every contempt proceeding arising in the courts of our state. It says: "A person ordered by any tribunal, except the supreme court, to be punished for a contempt, may appeal to the court to which other cases are appealable from said tribunal, etc." It doesn't undertake to classify any certain kind of cases, but includes every contempt case that may be instituted in the courts of our state. The attorney-general undertakes to argue that it only applies to that class of cases that are criminal in their nature, and not civil, but if that was the scope and purpose of the section it would have said so, in fact it says exactly to the contrary. We contend that the proper way to raise the validity of our appeal is by motion, and this the attorney-general has not done, but has elected to raise it in his brief, which evidently shows that he hasn't a great deal of faith in his, the contention that section 39 applies only to certain kind of contempt cases.

We submit that there couldn't be but one doubt about the validity of our appeal and that is the fact that we ap-

pealed on a pauper's affidavit and we think inasmuch as section 39 makes all contempt cases criminal that there is no doubt about that, and that we can either give bond, as provided by section 39, or make the pauper's affidavit as provided by section 62 or deposit money to cover the costs, etc., as provided by section 63.

We contend that appellant could have prosecuted a valid appeal by following the provisions of either of these sections as to the costs, that being all he had to provide for, as no fine was imposed, and it is to be noted that when section 39 refers to a *supersedeas* bond it has reference to the fine and not the costs.

We contend that it is the policy of the law of this state to guarantee to every person convicted of any sort of offense the right of appeal, and section 39 certainly guarantees this right to every person convicted of contempt, and this too, regardless of the kind of contempt that it may be, and when this right is once given, any person convicted of a particular class, that is, misdemeanor, felony, or cases carrying capital punishment, then that person is entitled to all the rights and remedies given to any other person convicted of a similar offense carrying similar punishment.

It has been held by the supreme court of our own state in a cause cited in 4 Sm. & M. 751, that a contempt of court is criminal, and inasmuch as contempts are criminal under the laws of our state, there couldn't be any doubt about the validity of appellant's appeal, as section 62 applies to all criminal cases. But the attorney-general has not raised the point and we can not avail ourselves of section 62 and appeal on a pauper's affidavit, but he takes the position that we cannot appeal under sections 39, 62 nor 63 either, but that if we appeal at all, we must appeal in the manner provided for civil cases. He seems to overlook the fact that the section authorizing appeals in civil cases, wouldn't authorize an appeal in contempt proceedings, as a contempt is only appealable where it is

specially authorized by statute, and inasmuch as section 39 is the only section we have authorizing appeals from contempt proceedings, we must conclude that it was the intention of the legislature to make this section apply to all contempt appeals. In fact, the section plainly says so, and inasmuch as this section makes all contempts committed in this state criminal, it seems to us useless to prolong the argument of this point further.

Appellee contends that the burden was on appellant to establish his inability to comply with the order of the court. We admit that this is true ordinarily, but in the instant case, the prosecution assumed the burden itself, and undertook to prove by Mr. Sorenson that appellant owned property, etc., with which he could pay said alimony, but Mr. Sorenson's testimony shows clearly that appellant didn't own any interest whatever in the teams, nor had he earned any money, in fact he hadn't quite made expenses. So we submit that under this proof that appellant is entitled to be discharged.

The attorney-general contends in his brief that where a person has been ordered to pay alimony and is unable to do so, and is out of employment, that the court can commit such a person to jail for his failure to work, but we say that if he is committed to jail it will be under our vagrant statute, and not for a contempt of court, as we don't believe that our supreme court will subscribe to any such doctrine or approve any such holding, regardless of what other states have held on this point. We contend that the better doctrine has been announced in the *Webb case,* 140 Ala. 262, 37 So. 96, and 103 Am. St. Rep. 30. In passing from this point we want to say that our vagrant statute is criminal, and if a person is fined under this statute it must be for a definite sum, and if he is imprisoned it must be for a definite time.

It is true that section 1673 does authorize the court to require a bond for the payment of alimony, but the court in the instant case did not make any such provision in

the decree and if it had made such provision, and appellant had failed to have executed bond due to his inability to give such a bond, he would not have been guilty of a contempt of court, and if he had refused to have executed the bond, the court then would not have been authorized to imprison appellant, and if it had, it would have had to be for a definite time.

*Hilton & Hilton,* for appellee.

Appellant assigns as the third error, that the court erred in not discharging the defendant when the state had closed its evidence. In answer to this assignment, we do not understand appellant's contention with reference to same, as he has not referred to any of the facts or the law that would justify such action on the part of the chancellor, especially in view of the fact that no such motion was made by appellant. We presume that their position is that the testimony, as given by the state, was not sufficient to justify a conviction for contempt. It would be a reiteration and a rehashing of the testimony to again call the court's attention to it. But by reading the record, or reading that part of the testimony that has been referred to in this brief, will be sufficient to show that the court did not err in this particular. Also, it seems that counsel for appellant has overlooked that rule of law which holds that the burden, to show his inability to comply with the decree of the court in paying alimony, is up to him. See 14 Cyc. 801, subheaded "B" and note 56 thereunder.

So, that when the state showed that the defendant had not complied with the order, then it developed upon the defendant to exculpate himself from contempt and to show that his action therein was not a contemptuous or wilful act, but merely one of inability to pay.

The two other assignments of errors, numbered four and five, are as follows: The court erred in not discharging the defendant of its own motion, when all the

evidence was submitted. Fifth, the finding of the chancellor was contrary to the law and evidence in the case. These two assignments or errors will be argued together, as they embrace practically the same contention. The case of *Adair* v. *Gilmore,* 17 S. R. 544 and 555, referred to in appellant's brief, is not in point here, for the reason that it does not involve the question of paying out money at all. In the case, *supra,* the answer of the person cited for contempt, showed that as to uncollected notes, the decree of the court was performed; that as to the money collected, it was used in the payment of attorney's fees, court costs, debts and expenses of living, and that this occurred before the filing of the complainant's bill, and that respondent has no means visible or invisible, and did not have at the time of the rendition of the decree, nor at any time since, with which to pay said debt, or to perform said decree; that he failed to comply with the decree, how, because of his poverty and insolvency, and not from wilfulness or contumacy. There is no evidence in the record which conflicts with this statement of facts." This is indeed quite at variance with the case at bar; for our contetnion is, that the evidence discloses, beyond cavil or peradventure, that appellant was able to pay this money and to comply with the decree of the court; and this was shown by his various dealings with the mill company, and by the testimony of Sorenson himself. If it is possible for men to be actuated by contumacy and wilfulness in failing to provide for his wife, as required by the solemn decrees of the court, this record discloses that condition.

In the case of *Webb* v. *Webb,* 37 So. Rep. 96, referred to in appellant's brief, we say that it is not applicable here, for the reason that in that case the court held that the complainant was unable to pay the decree out of money or property. And further that he had no work or employment, and the question there involved was in fact whether the court could require a person who was

without money or property to labor and divide the earnings with his wife. The case at bar is different in this, all the proof shows that the appellant here had employment, that he was getting two dollars and fifty cents per thousand for hauling timber; that he was operating some four or five log teams; that he was earning some five or six hundred dollars per month; that he was able to obtain advancements of whatever kind or nature his business required; that he was able to obtain money from his employer for the purpose of buying more log teams; that his employer testified that he would have made the advancement of seven dollars and fifty cents per month if appellant had requested it. So that there is quite a difference in the two cases. In the case, *supra*, the main point cited there was with reference to whether the court can compel a person to work in order to support his wife; here it was whether or not the proof showed that appellant had money or property to have applied to the payment of said decree, which after consideration by the court, from the evidence the court adjudged, as a fact, that he did have property and could have paid the alimony, and that his action in not doing so was an act of wilfulness and contumacy. *Ex parte Silvia,* 69 Am. St. Rep. 58.

We say, that the proof in this case shows, convincingly, that appellant could have complied with this order. And, further more, it could be complied with now. And all that would be necessary for appellant to do would be to call upon his employer and this money would be forthcoming. All the other cases as cited by appellant are along the same line, and are not applicable for the reason that the facts in this case are as stated above, that said appellant could have, and now can comply with the order of the court in this case. We call the court's attention, further, to the fact that it is a well-settled policy of this court, that where a chancellor passes on the facts in a case, that this court will not disturb it, if there were

sufficient evidence in the record to warrant the finding of the court; and this is true, even though the independent judgment of this court might be, that if they had been the tryer of the fact, they would have rendered a different opinion. The lower court heard all the facts in this case, observed the witnesses, saw their demeanor upon the stand, and therefore, rendered a decree in the case according to his best judgment.

In the case of *Durham* v. *State,* 52 So. Rep. 627, this court held that the lower court, being the tryer of facts in contempt proceedings, it is presumed that he followed the evidence in finding upon the facts showing guilt.

In the case of *Carper* v. *Carper,* 48 So. Rep. 186, this court held that a husband can be punished for contempt for a failure to pay alimony and attorney's fees awarded.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

I desire to submit, at the outset, a question involving the validity of the appeal in this case. I do so with the greatest diffidence and hesitation, considering the fact that the appeal was granted by the chief justice and apparently under the authority of section 39 of the Code. I submit, however, and ask the earnest consideration of the court on this proposition, that this is not a proceeding of the kind of contempt provided for in that section. That section has to do with such contempt proceedings as are criminal in their nature and punitive and does not take into consideration civil contempt proceedings where a punishment is only coercive in its nature and not punitive, and in such cases I contend that the bond, in order to obtain a *supersedeas,* should be conditioned as in other civil suits and to perform the judgment required in case of affirmance. I refer the court on this proposition to the case of *Perry* v. *Pernet,* 165 Ind. 67, 6 Am. & Eng. Ann. Cases 533, and to the authorities collated in case note to this case in the Annotated Case Series which appear at page 535.

I submit that the action of court was fully warranted by the evidence. It is manifest to my mind that the appellant could easily have procured the necessary money to comply with this order had he tried to do so. It certainly was his duty to make an earnest effort to comply with the law and if he failed to make an effort, he cannot be heard to defend against contempt because he has not done what he could do to comply with the order. The most efficacious, and perhaps the most common way of enforcing the duties which are imposed upon a husband under the law, is the proceeding in contempt for a failure. An obligation of a husband to support his family is not only a duty which he owes to his wife and children, but it is a duty that he owes to society as well. In *State* v. *Kind,* 22 So. Rep. 887, it is said an order for alimony in a divorce suit is nothing more than a judicial sanction and enforcement under abnormal conditions through the judiciary, the duty by the husband to support his wife. That the right to receive or demand support or money in order to enforce support is something other and different than a right to receive and be paid a technical debt. It is also held that a judge, in a proper case, has the power to punish, by imprisonment, a husband who has been ordered to pay alimony to his wife and who has continuously refused to obey this order while able to do so.

To the same effect is the case of *Ex parte F. M. Davis,* 111 S. W. 394, 17 L. R. A. (N. S.) 1140, and authorities cited in the case note. These cases proceed on the theory that in forcing claims for support, the court is not proceeding on an idea that it is in the nature of a claim for money, but they proceed on the theory that it is a personal obligation, the performance of which may be enforced by the courts, even to the extent of imprisonment. In allowing alimony, the question is not confined as to the financial ability of the appellant but it takes into consideration his earning capacity, and it is a well-known fact that a very large number of persons who have prac-

tically no property, but whose earning capacity is good, do support families in comfort and also accumulate, in many instances, comfortable fortunes. Most of the authorities, and decidedly the better authorities in reason, hold that his duty may be enforced through the courts by coercive means, and while the Alabama court in the case cited in the brief of *Hilton & Hilton* holds that they cannot compel a man to labor to discharge his obligations and they will not commit him to jail for a refusal to work where he has the ability to work, I submit that the better reason is that where he is able to work and will not do so that the court can apply its coercive power and keep him in jail until the persuasive influence of the prison persuades him that the part of wisdom is to work rather than to stay in jail.

Numerous authorities hold that he may be compelled to work where he will not do so voluntarily. *Muse* v. *Muse*, 84 N. C. 35; *Campbell* v. *Campbell*, 37 Wis. 206; *Edinmuller* v. *Edinmuller*, 37 Cal. 364; *Foote* v. *Foote*, 22 Ill. 425; *Bailey* v. *Bailey*, 21 Gratten (Va.) 43; *Bronl* v. *State*, 31 So. 248.

There are numerous other authorities that hold that the court may commit for contempt in case of failure, but I deem it unnecessary to cite other authorities from other states. Our own state has provided other proceedings by which this obligation may be enforced but it in no means dispenses with the power of the chancery court to enforce its decrees by imprisonment. Under our vagrancy statutes it is expressly provided that where a person abandons wife and family without just cause, leaving them without a support, that he can be arrested and committed to jail. These statutes are construed as being remedial as distinguished from criminal and of a continuing nature. *Vance* v. *State*, 61 So. 305; *McRae* v. *State*, 61 So. 977. The only difference practically is that the vagrant proceedings may be taken in a court of law while the alimony proceedings seek to effect the same object through the courts of equity.

COOK, J., delivered the opinion of the court.

This is an appeal from an imprisonment for contempt. Appellant filed a bill against his wife, asking the chancery court to grant him a divorce. The court denied the prayer of the bill, and, upon the application of his wife, ordered that he pay his wife alimony in monthly installments of seven dollars and fifty cents. Appellant failed to pay the alimony, and, upon the motion of his wife, a rule was granted by the chancellor, citing appellant to appear and show cause why he should not be punished for contempt. After a full hearing, the chancellor was not convinced that appellant had not willfully, deliberately, and contumaciously ignored the orders of the court, and therefore sentenced him to confinement in jail, unless he paid the alimony as directed.

We find no error in this action of the court. When this appeal reached this court, it was docketed as a state case, and the attorney-general appeared for the state. This is in no sense a criminal proceeding, but is a civil proceeding, and should have been entered on the civil docket.

*Affirmed.*