## Edmonson, Sheriff, *v.* Ramsey.

[84 South. 455. In Banc. No. 21002.]

1. Habeas Corpus. *Proceeding to enforce right of personal liberty is civil.*

A proceeding to enforce the right of personal liberty by means of *habeas corpus* is a civil and not a criminal proceeding.

2. Habeas Corpus. *Sheriff held person entitled to appeal; "party aggrieved."*

In a proceeding for a writ of *habeas corpus* to compel the admission of the relator to bail, the sheriff who has the custody of the relator is a "party aggrieved," and entitled to appeal under section 35, Code 1906, section 11, Hemingway's Code.

### On the Merits.

3. Divorce. *Chancery court may require a bond to secure payment of alimony.*

Under section 1673, Code 1906, section 1415, Hemingway's Code, the chancery court is expressly empowered to require defendant to execute a bond with sufficient sureties for the payment of alimony.

4. Divorce. *Chancery court may remand defendant to custody of sheriff until bond for alimony is executed.*

The chancery court has the inherent power where, in its judgment, it is deemed necessary for the enforcement if its orders, to remand a defendant to the custody of the sheriff until he has executed the bond required of him by decree of court as provided in section 1673, Code 1906, section 1415, Hemingway's Code.

5. Habeas Corpus. *Decree awarding alimony is conclusive as to defendant's ability to give bond.*

In a *habeas corpus* proceeding to obtain his liberty the ablity of relator to execute a bond in accordance with the decree of the chancery court awarding alimony was conclusively adjudicated in the decree for divorce and alimony.

Appeal from Circuit Court of Forrest County.

Hon. R. S. Hall, Judge.

Petition for *habeas corpus* by N. K. Ramsey against A. E. Harbison, sheriff of Forrest County. Petitioner

discharged from custody and the Sheriff granted an appeal. Motion to dismiss the appeal denied, and after expiration of his term the appeal was prosecuted by his successor, W. M. Edmonson, and judgment reversed and petition dismissed.

*Currie & Currie,* for appellants.

The only question which can or does arise on this appeal is: Did the chancery court have the authority in law to require the appellee herein, N. K. Ramsey, who was the defendant in said suit, to execute a bond for the payment of the decree rendered against him for the support and maintenance of his wife and child, and whether upon his failure to execute, or refusal to give bond, the chancery court had the right, power, authority and jurisdiction under the law, to commit him to the custody of the appellant, as sheriff of Forrest county, until such time as that he should give the bond or until the further order of the court?

It is alleged in the bill of complaint and was established by the proof in the trial of the case that the appellee had said and threatened that he would leave the state of Mississippi and go beyond the reach of the courts and the laws in this state before he would pay alimony for the support of his wife and child, if the same should be adjusted against him. It was alleged in the bill of complaint and established by the proof in the trial of the case, that there was danger of his so doing and that the appellee would, unless restrained from so doing by order of the court leave the State of Mississippi and go beyond the jurisdiction of the laws and courts of the state of Mississippi for the purpose of defeating and would thereby defeat the payment and collection of the decree rendered against him for the support of his wife and child.

All these facts were found and adjudicated by the chancery court and upon that state of case the chancery court found "need be" to require the giving of bond by the appellee herein to secure the payment of said decree according to its terms and conditions and ordered that the appellee be required to execute bond with sufficient sureties in the penalty of one thousand dollars conditioned for the payment of said decree, and in default thereof, he be detained in the custody of the sheriff and in the county jail of Forrest county until such time as that he did give the bond or until the further order of the court. Such is the sum and substance of that case and the decree therein rendered by the chancery court of Forrest county.

Now, by reference to section 1673 of the Code of Mississippi, 1906, which reads as follows: "When a divorce shall be rendered from the bonds of matrimony the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody, and maintenance of the children of the marrage and also touching the maintenance and alimony of the wife, or any allowance to be made to her, and may, if need be, require assurance for the payment of the sum so allowed; and the court may afterwards, on petition, change the decree and make from time to time such new decrees as the case may require: "It will be seen the above section pointedly and specifically authorized the chancery court to render the decree which it did render in the case. It is authority, statutory and absolute, for such a decree and such procedure as was had in the case.

The statute quoted was enacted to cover exactly and precisely just such a case as that in which the decree annulled by the judge of the circuit court was rendered. We do not pause to discuss the many inhuman, brutal, and abusive acts charged and complained of against the

appellee in the case in the chancery court further than to say that every allegation in that bill was thoroughly established by the proof introduced in the trial of the case. The mother was deserted and helpless and the infant which she bore the appellee exceedingly delicate and practically blind. A case of vagrancy was established against the appellee.

If it is to be held that a chancery court in such a case has no authority under section 1673 to requre such a bond and to make such other orders and to issue such other writs as may be necessary to compel the giving of the bond, then let us spit on and sponge out the section as meaningless and as affording no remedy.

We submit that the decree under which the appellee was being held by the appellant in the county jail is a valid and binding decree and that the order of the Honorable R. S. Hall, Judge of the Twelfth Circuit Court Judicial District, in annulling the same and ordering the appellee released without giving the bond required, was error, contrary to law and that the order releasing the appellant ought to be annulled and the appellee ordered back into the custody of the appellant until such time as that he shall have given the bond required by the chancery court or until the further order of the chancery court.

*Robt. L. Bullard,* for appellee.

The chancery court is without power ever, under any circumstances, to commit any one to jail for any cause except for contempt of its authority and dignity. It is without power to inforce any of its decrees by means of imprisonment.

If we assume that the chancellor was warranted in ordering the appellant to give sureties for the performance of the decree in question, which we deny, still he had no power to commit him to the county jail to coerce

either the payment of the alimony, or the giving of security for the payment of future instalments that might or might not fall due hereafter.

The authority to decree alimony and to order the giving of security, rests upon the same authority and is governed by the same law. Section 1673, Code 1906, is the statute in question and in it we find: "Where a divorce shall be granted from the bonds of matrimony, the court may . . . make all orders . . . touching the maintenance and alimony of the wife, or any allowance to be made to her, and may, if need be, require sureties for the payment of the sum so allowed, etc.,

Now, for the payment of what sum so allowed may sureties be required? The court may do one of two things, not both. He may make such orders as he may deem necessary "touching the maintenance and alimony of the wife," or he may make an "allowance to her." The two things are distinct and are so recognized by the authorities on the subject. In the case of *Guess* v. *Smith*, 56 So. 166, this court said: "When alimony is commuted to a lump sum, to be paid presently, as in this case, in fixing the amount, the court takes into consideration the possible remarriage of the wife to a husband able to support her, and any and all contingencies which might arise. It is a settlement between the husband and the wife as to the interests of the latter in his property, and as to the extent of the husband's duty to contribute to her support and maintenance." Such, therefore, is the allowance the court is authorized to make to her, and for the sum so allowed may require sureties.

Surely it was never contemplated by this statute that sureties could be required for the payment of something that might never accrue. The decree is to pay seventy dollars per month. What "sum" then could the sureties undertake to pay? Would the "sum" to be secured be

seventy dollars or seven hundred times seventy? It might be either or none. No law was ever oppressive enough to compel a man to give security for the payment of something that it was impossible for him to pay. Presumably it would be his duty to pay each month as long as each of them should live. That might not be a month and it might be more than half a century. No law could authorize a court to compel the giving of security for the payment of any demand involved in the haze of such uncertainty as that.

But let it be conceded for the sake of argument that the court did have authority to require sureties for the continued payment of alimony at stated periods indefinitely. Even then to assume the power to order that, "said defendant be and he is hereby committed to the county jail of Forrest county, there to be kept until the entering, execution of and filing and approval of such bond," is the assertion of a tyranny worthy the dark ages. It is the assertion of a power that has strewn the shores of modern times with some of its most noble ruins, as for example the Chelsta and Stein. Successful revolts of human liberty against it have given the freest of people their most cherished anniversaries, as the 14th. of July marks for the people of France the fall of the Bastile. That we may never have to strive against it again, two constitutional guarantees have been committed to the keeping of this court, viz.: Section 23, Constitution 1890. "Cruel nor unusual punishments shall not be inflicted," and Section 30. "There shall be no imprisonment for debt."

Any imprisonment that is indefinite, or at the will of any person, is always held, I think, to be within the condemnation of section 28. Here the imprisonment is both indefinite and at the will of the chancellor who imposed it. There is nothing but his own death that can be pointed to as surely terminating his stay in jail, nothing but the writ of *habeas corpus*.

It is no answer to this to say that the chancellor might, at some time in the future, relent and revoke the order, or that his wife might die before he does. It is no answer to say that he might secure his release by giving sureties he has no opportunity to get, perhaps could not get, or perhaps might not be accepted. Even so that would be to violate section 30, being an imprisonment for debt, for there is no difference in principle between imprisonment for a debt and imprisonment for security for a debt.

Neither is it any answer to say that the payments here to be made are for alimony. True alimony is not a debt in the sense that it is a sum owing that grows out of a contract. It is indeed founded upon a civil duty, and it is for that reason that courts have held, some of them reluctantly, that a husband may be ordered to pay alimony and then be punished for contempt for a wilful disobedience of the order. That seems to be the extent, the farthest, that any court has gone, and they deny the power of the court to commit to imprisonment, for the purpose of coercing payment, at least in all the states whose constitutions have an unlimited inhibition against imprisonment for debt, as ours has. Some of the courts, notably in Alabama say that to permit punishment for contempt for refusing to pay alimony does violate the very spirit of the constitution but reluctantly follow it out of deference to long established precedent. This court has never, so far as I can find, decided the question, or been called upon to do so, but *dicta,* in at least one case, would indicate that the power to punish for contempt would be upheld. But surely it is unthinkable that it will be tolerated that one should be ordered to pay alimony and then committed to jail until it should be paid, much less ordered to give security for the payment of unmatured installments and then committed until the security be given.

No court, so far as I can find, has ever attempted to enforce payment of a decree for alimony by committing to prison. Such right was denied by the English ecclesiastical courts, from which our practice in such cases is taken, and no American case can be found, I think, upholding it. Cases are numerous, of course, where a contumacious husband has been punished for wilfully refusing to obey the court's order to pay, but this is far different. It seems universally to be held that this can only be done against those having the means to pay who will not pay after being ordered by the court to do so. It is even held, with no conflict of authority, so far as I can find, that if one has not the property or money to pay when ordered to do so, but is able to work and earn it, still the court cannot punish him for contempt, even where he willfully refused to work.

The following authorities will be found to support the doctrine here contended for: 6 English Ecclesiastical Reports 391; 3 Edwards, C. R. 194; *Pain* v. *Pain*, 80 N. C. —; *Steller* v. *Steller*, 25 Mich. 159; *Carleton* v. *Carleton*, 44 Ga. 216.; *Staples* v. *Staples*, 24 L. R. A. 433, and note 9; *Otillo* v. *Otillo*, 44 So. 799; *Webb* v. *Webb*, 37 So. 96.

The holding that he could not be adjudged guilty of contempt for not working in order to earn an income with which to pay the decree was approved and affirmed. Therefore, the chancery court, when it decreed that Ramsey pay seventy dollars per month as alimony was powerless to commit him for the payment of it, or to compel him to give security for it. He could not be committed, if at all for either until he is adjudged guilty of contempt for refusal to comply with the order, having the ability to comply.

If it had been complained in the chancery court that he refused to comply with its order; if he had been afforded an opportunity to be heard as to why he did not, and was then committed as for a contempt, then,

whether right or wrong in its holding, the order of the court committing him would present a wholly different question and would be reached by entirely different means, if erroneous. This is in no sense a punishment as for a contempt, but an order together with a contemporaneous committment to jail "there to remain until the sureties aforesaid" be approved.

Much is attempted to be made by this recital in the findings of the chancery court as recited in the decree. "And in further appearing to the court from the testimony in the case that said defendant, N. K. Ramsey, has expressed his intention to leave the jurisdiction of the court," etc. What of it, if that was so? Does the fact that one is sued, abridge his liberty or destroy his freedom to go where he will? It is not pretended, or found, that his going would, or ought, to prejudice the rights of appellant. It is not pretended that he had any property or that he would or could carry anything beyond the jurisdiction of the court that was of the slightest interest to her. Does one's liability to pay alimony affect his right to go where he pleases any more than his liability to comply with any other civil duty?

What was the basis and purpose of this finding by the chancellor? At the bottom of page five the appellant in her brief admits that his, Ramsey's home, is in Indiana. Presumably then, he was here in attendance upon the court. If he had any other purpose it does not appear. That was the basis of this finding in the courts decree, no doubt. Indeed any court will take notice of the fact that any man is likely to go home at almost any time when his errand here is done. It is a universal longing of the heart of man to go home, to be at home. Upon the homeing instinct is founded the state, the nation, and so this appeal is made in the assurance, "in my father's house are many mansions." Has the time come when any man adjudged to pay money for any cause is to be sent to jail simply and since because

he is likely to go home, even though home may be in another state?

It is submitted that the foregoing legal principles should be determinate of this cause, and it is impossible to guess why at least three-fourths of the statement of fact upon which the argument of appellee is based, are not in the record and are nonexistent so far as appears. To grievous straights indeed must she think herself driven when it is said in the brief of her counsel that in making bail in this proceeding, "to procure which he deposited with the agent of that company (the surety) the sum of five hundred dollars cash which, however, he immediately pulled down after he was ordered discharged, "when it is not even pretended that there was ever any evidence of that pretended fact, when there is nothing kin to it in the record and when it is not even true. Why are such assertions made? Do they hope to arouse prejudice against Ramsey by this, as is perhaps also their purpose in the oft repeated assertion that he "threatened to leave the state" as well as those other gratuitous (shall I say malicious) assertion that his wife has had him prosecuted several times for vagrancy? To all such I make no reply other than to point to the record and say, upon that let Ramsey's right be judged.

SYKES, J., delivered the opinion of the court.

The appellee, N. K. Ramsey, presented a petition for a writ of *habeas corpus* to the circuit judge of the Twelfth judicial district. In this petition he claims that he is being illegally deprived of his liberty by A. E. Harbison, sheriff of Forrest county, and was by the sheriff incarcerated in the county jail; that a person styling herself Mrs. Carrie Hartzog Ramsey lately instituted a proceeding for a divorce in the chancery court of Forrest county against the petitioner, averring

among other things in her bill of complaint that the relator was her husband and that she was entitled to a decree annulling and dissolving the alleged bonds of matrimony existing between them; that, on final hearing, the chancery court undertook and pretended to adjudicate that relator should pay to Carrie Hartzog Ramsey the sum of seventy dollars a month for an indefinite length of time, for her support, and also stipulating and providing in said pretended decree that the support money should begin the 1st of October, 1919, and at the same time requiring relator to execute a writing obligatory whereby he was to bind himself and his sureties for the payment of the alimony; that, while petitioner was in no respect in contempt of court, a writ was issued and placed in the hands of the sheriff commanding the sheriff to immediately arrest petitioner and place him in jail until he executed the bond. Petitioner avers that he is without property or means, and that it is impossible for him to make the bond required by the decree of the chancery court, and that unless his petition is granted he will probably die in jail or spend the balance of his life there; that he is incarcerated in utter violation of the constitutional inhibition that there shall be no imprisonment for debt; that he is also incarcerated for his inability to give the security that the pretended decree calls for. He prays for a writ of *habeas corpus* directed to Harbison, sheriff, commanding him to produce his body and to obey the orders and judgments of the court.

The writ was duly issued, and the sheriff Harbison in his answer admitted that Ramsey was incarcerated in the county jail of Forrest county, but denied that he was illegally deprived of his liberty. He alleged that petitioner was held in jail upon a writ issued out of the chancery court of Forrest county based upon a decree rendered by that court authorizing the issuance of the writ. A copy of the decree is attached to the answer

of the sheriff.    The sheriff prays in his answer that
the petition be dismissed and that Ramsey be returned
to his custody as sheriff.    The decree of the chancery
court made an exhibit to the answer, dissolved the bonds
of matrimony theretofore existing between Mrs. Carrie
Hartzog Ramsey and N. K. Ramsey, and gave to Mrs.
Ramsey the custody of their infant child and decreed
that the defendant pay to Mrs. Ramsey as permanent
alimony the sum of seventy dollars a month;    the first
installment thereof to be paid on the 1st day of October,
1919.    The  decree  also  contains  this  provision:

"And it further appearing to the court from the testi-
mony in the case that the said defendant, N. K. Ramsey,
has expressed his intention to leave the jurisdiction of
the court and had threatened to do so, and that there is
danger of his leaving the jurisdiction of the court with-
out paying said alimony, together wth the additional
sum of twenty-five dollars which was and hereby is de-
creed to said complainant for solicitor's fees; it being
the opinion of the court that said defendant ought to be
required to enter into bond for the payment of said
alimony including said attorney's fees and that a bond
in the penalty of one thousand dollars signed by an in-
demnity company duly authorized to do business in the
state of Mississippi or by two or more good and suffi-
cient sureties to be approved by the clerk of this court
conditioned for the prompt payment of said alimony
as herein ordered and decreed—it is accordingly order-
ed, adjudged, and decreed by the court that said de-
fendant, N. K. Ramsey, be and he hereby is required to
enter into, execute, and file in this cause a good and
sufficient bond in the penalty of one thousand dollars,
signed by good and sufficient sureties of a surety com-
pany to be approved by the clerk of this court con-
ditioned for the payment according to the terms in this
decree of the said alimony herein adjudged against him,
and that said defendant be and he hereby is committed

to the county jail of Forrest county, there to be kept until the entering, execution of, and the filing and approval of such bond, or until the further order of the court, and that said defendant be and he hereby is taxed with all costs of court. For all of which let proper writs, process, and execution issue, including a warrant for arrest of said defendant and a *mittimus* for his commitment to jail in default of bond as herein required.

"It is ordered and decreed by the court that jurisdiction hereof be retained so as to enable the court at any time justice may require to alter or modify the terms and conditions of this decree."

The cause was heard on these pleadings and the exhibit to the answer. The circuit judge held that the part of the decree committing Ramsey to the county jail until he executed the bond required by the decree was in excess of the authority of the chancry court and constituted no sufficient warrant or authority for the imprisonment of relator, and he discharged the relator from custody. The judgment granted the sheriff an appeal to this court.

### ON MOTION TO DISMISS.

The appellee, Ramsey, has filed a motion to dismiss this appeal, in which he alleges that the sheriff has no right to appeal from a judgment in a *habeas corpus* proceeding. Section 36, Code of 1906, section 11, Hemingway's Code, provides that: "Any party aggrieved by the judgment on the trial of a *habeas corpus* shall have an appeal to the supreme court."

So the question here to be decided is whether or not the sheriff is a party aggrieved by the judgment of the court. That he was a necessary party to the proceeding is beyond question. The prisoner was in his custody by virtue of the decree of the chancery court. It was his duty as sheriff to care for and maintain this prisoner and to keep him in custody until further order

of that court. By the petition in this case he was called upon to answer explaining why he had the relator incarcerated in jail. In his answer he justified this incarceration by exhibiting the decree of the chancery court. The circuit judge decided adversely to the contention of the sheriff, holding in effect that the sheriff had no right to keep this man in jail because that part of the decree so ordering was in excess of the power of the chancery court and therefore null and void, and this judgment ordered the sheriff to release the prisoner from his custody. When this judgment was entered, the sheriff was then in this predicament. He was first ordered by the chancery court, a court of equal dignity with that of the circuit or *habeas corpus* court, to hold this prisoner until further orders of the court. He was later ordered by the circuit judge, exercising the powers conferred upon him by statute in cases of this kind, to release this prisoner, because the order under which he was imprisoned was void. As the custodian of the prisoner with the two conflicting orders in his hands, he was certainly officially interested in knowing whether or not he was entitled to the custody of this prisoner and in knowing whether or not the order of the chancery court was void. We think an understanding of the facts of the case, when considered in connection with the above statute, is sufficient to settle the question of the right of the sheriff to prosecute an appeal. The right of one sheriff to sue out a writ of *habeas corpus* against another sheriff was upheld by this court in the case of *Wray* v. *Kelly,* 98 Miss. 172, 53 So. 492. In that case the aggrieved sheriff presecuted an appeal to this court and was by judgment of this court given the custody of the prisoner. The exact point here was not expressly made, however, in that case.

In the case of *State* v. *Gordon,* 105 Miss. 454, 62 So. 431, an appeal from a *habeas corpus* decision was prosecuted both in the name of the state and of the sheriff.

In the opinion on a motion to dismiss, the court held that *habeas corpus* proceedings are civil and not criminal in their nature. We quote, from page 466 of 105 Miss., page 432 of 62 So., of the opinion:

"On the contrary, it is a new suit, brought by him to enforce a civil right which he claims as against those who are holding him in custody under the criminal process. If he fails to establish his right to his liberty, he may be detained for trial for the offense; but if he succeeds he must be discharged from custody. The proceeding is one instituted by himself for his liberty, not by the government to punish him for his crime."

This quotation is taken from the opinion in the case of *Ex parte Tom Tong,* 108 U. S. 556, 2 Sup. Ct. 871, 27 L. Ed. 826, which cites a number of cases sustaining it. Among these cases is that of *State* v. *Huegin,* 110 Wis. 189, 85 N. W. 1046, 62 L. R. A. 700. In this Wisconsin case in speaking of the sheriff it is said: "That the relator (sheriff) here is a party aggrieved within the rule stated it seems is quite clear."

In the latter part of this opinion we find the following: "The adverse party on the record was the sheriff. He was to all intents and purposes the defendant in the proceeding, regardless of the name by which such a party is commonly known."

Our conclusion is, which is borne out by the above authorities, that the sheriff is a necessary party to a proceeding of this kind; that in his official capacity he is interested in the result of the judgment of the court; and that under this statute he is an aggrieved party who has a right to appeal to this court. Since this appeal was effected, Mr. Harbison's term as sheriff of Forrest County has expired, and on motion, under section 727, Code of 1906, section 510, Hemingway's Code, the suit has been revived and is now being prosecuted in the name of Mr. W. M. Edmonson, his successor.

## ON THE MERITS.

The sole question presented to us upon the merits of this controversy is whether or not that part of the decree of the chancery court committing Ramsey to the custody of the sheriff until he made the required bond for the payment of the alimony is void; or, to express it in different language, did the court have power to order this man into the custody of the sheriff until this bond was made? Section 1673, Code of 1906, section 1415, Hemingway's Code, provides among other things that: ''The court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders . . . touching the maintenance and alimony of the wife, or any allowance to be made to her, and may, if need be, require sureties for the payment of the sum so allowed; and the court may afterwards, on petition, change the decree . . . as the case may require.''

It cannot be disputed that one who contumaciously refuses to pay alimony decreed by the chancery court may be imprisoned by that court for a contempt. This proposition is not denied. Two of the late cases dealing with it are *Hamblin* v. *Hamblin,* 107 Miss. 113, 65 So. 113, and *Millis* v. *State,* 106 Miss. 131, 63 So. 344. In these cases, however, the recusant party was formally cited for contempt. It is also to be borne in mind that our chancery courts have power to issue the equitable writ of *ne exeat republica* even before an award of alimony, when a proper charge is made to the court that the defendant is about to leave the state or that he has said that such was his purpose. Under this proceeding, he may be required to execute a bond with sufficient sureties, conditioned not to leave the state, or as security for the payment of the alimony which may be adjudged against him. 1 R. C. L. 888; *Bronk* v. *State,* 43 Fla. 461, 31 So. 248, 99 Am. St. Rep. 119. The object of the writ of *ne exeat* is to detain

the person of the defendant in order to compel him to perform the decree of the court in those cases where his departure would endanger the rights of the complainant of prevent the effectual enforcement of the order of the court. We have been unable to find any reported cases in this court where this writ was used. That the chancery court has the power to enforce its decrees goes without saying. In the case of *Watson* v. *Williams,* 36 Miss. 331, in the opinion it is said:

"The power to fine and imprison for contempt, from the earliest history of jurisprudence, has been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge. It is a power inherent in all courts of record, and coexisting with them by the wise provisions of the common law. A court without the power effectually to protect itself against the assaults of the lawless, or to enforce its orders, judgment, or decree against the recusant parties before it, would be a disgrace to the legislation, and a stigma upon the age which invented it."

This court had the power to commit the defendant Ramsey to jail for contempt of court under proper proceedings. It likewise had the power under proper proceedings to have issued the writ of *ne exeat republica.* The lawmakers in enacting section 1673, supra, were aware of these powers. In this section they gave the court the right to require the defendant to give bond for the payment of alimony. It must be assumed that in the divorce proceedings the court necessarily on the hearing adjudged that the defendant was able to give the bond required of him. From the decree it will also be seen that the court found that this man expected to evade the order of the court and leave its jurisdiction. This fact was adjudged by the decree of the court. Under these circumstances was the court powerless to remand this man to the custody of the sheriff until he had executed a bond which he was perfectly able to do?

The court had the power in this case to do directly that which it could have done either by proceedings in contempt or by proceedings for the writ of *ne exeat*. The statute expressly gives it the right to require this bond of defendant. It has the inherent right to enforce its orders, judgments, or decrees. In this case the court found that the only way it could require the defendant to obey its orders was to remand him to the custody of the sheriff until the bond was executed. As is aptly stated in the case of *Pain* v. *Pain*, 80 N. C. 322:

"Without the ability to compel obedience to its mandates, . . . many of its most important and useful functions would be paralyzed."

If the court were powerless to coerce the defendant to execute the bond by committing him to the custody of the sheriff until he did so, then it would be powerless to coerce a defendant to obey its valid order. It would therefore follow that this part of the above section of the Code would be ineffectual and inoperative because of the lack of power of the court to enforce it. Such is not the law.

The decree of the chancery court was valid and binding upon the defendant Ramsey, appellee in this case. The judgment is reversed, and the petition dismissed.

*Reversed, and petition dismissed.*