451 So.2d 779 (1984)
Barbara Kaye BUSH
v.
C. Nolon BUSH.
No. 54921.
Supreme Court of Mississippi.
June 6, 1984.
Rehearing Denied July 11, 1984.
*780 Dale Hubbard, Wayne E. Ferrell, Jr., Ferrell & Hubbard, Jackson, for appellant.
Charles H. Evans, Evans & Evans, Thomas J. Lowe, Jr., Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
PATTERSON, Chief Justice, for the Court:
This is an appeal from the Chancery Court of the First Judicial District of Hinds County, wherein Barbara Kaye Bush was granted a divorce from her husband, C. Nolon Bush, on the ground of uncondoned adultery. Additionally, the chancellor's final decree awarded Mrs. Bush custody of the parties' minor children, use and possession of the household goods and of one of the parties' automobiles, and the following sums: (1) $7,500.00 to be used to pay storage fees on certain household goods and for relocation expenses; (2) $10,000.00 lump sum alimony to be paid in equal installments on or before October 1, 1983, and on or before April 1, 1984; (3) $800.00 per month child support; and (4) $1500.00 attorneys fees. Bush was also required to maintain a minimum $100,000 insurance policy on his own life with the children of the parties as named beneficiaries and to pay all medical, dental, orthodontic, optical, and all reasonably necessary psychiatric/psychological expenses of the minor children.
Aggrieved with this judgment, Mrs. Bush appeals and assigns as error that the chancellor failed:
1. To award periodic payments of alimony;
2. To require Bush to post bond as security for payment of alimony and child support; and
3. To award an amount for necessities which had accrued at the time of trial.
The parties were married in July 1971, and had two children: a son in 1975 and a daughter in 1980. Nolon Bush also had three children from a previous marriage.
Barbara Bush ceased living with her husband when she discovered he was involved in an adulterous relationship with a colleague. The details of that liaison need not be discussed, since it is undisputed here that Mrs. Bush is entitled to a divorce on the ground of adultery. This case instead centers on the issue of the amount of support Bush should be required to pay and whether sureties for the payment of those amounts should be required.
Mrs. Bush first contends that the chancellor erred in refusing to award periodic *781 payment alimony. We are of the opinion this case should be remanded for consideration of that issue. In so holding, we note first in fairness to the chancellor that Bush's financial picture, as it appears in the record, is hazy. We agree with the chancellor's observation that "[T]here was no way to tell what [Bush's] business is, what [he has] made, what [he has] spent, where it has gone, whether the government has gotten what they were supposed to, or what it was." However, we are concerned that the apparent reason for the refusal of periodic payment alimony was not the difficulty of ascertaining Bush's financial condition, but that the chancellor was of the opinion such an award could not be made in combination with an award of lump sum alimony. Our conclusion is based on the following colloquy:
BY THE COURT:

If you would rather have that than the alimony lump sum that I show, we will go along with it.
BY MR. FERRELL:
No, sir.
BY THE COURT:
That is what I thought, and why I thought what I was offering was better. But I will let you go either way.
.....
BY MR. FERRELL:
My problem with that, Judge, she needs the lump sum alimony but we feel like he has successfully evaded his duties. If he goes out now and makes $100,000.00 like he has in the past, ... if these two pay stubs are just put here for the purpose of persuading the court in the wrong direction ... we would have to have a material change of circumstances which that would be, and we really request just $1.00 a month or something where we can modify it if he hasn't
BY THE COURT:
I don't think that would do it.
.....
We will go either way with it, but
BY MR. FERRELL:
My request was to have the lump sum, but have $1.00 per month which would be just
BY THE COURT:
I don't think we can do that.
BY MR. FERRELL:
We will take the lump sum. (Emphasis added.)
The foregoing indicates to us the chancellor believed he had no authority to award lump sum alimony in conjunction with periodic payment alimony. However, we have held to the contrary. Harrell v. Harrell, 231 So.2d 793, 796 (Miss. 1970). In Jenkins v. Jenkins, 278 So.2d 446, 449 (Miss. 1973), we stated:
... Harrell, as we view it, upholds and thus authorizes alimony in lump sum, either alone or in conjunction with other awards. It appears to us that a lump-sum award in conjunction with an award of monthly alimony would have been proper in this case.... It seems to us in a case such as this where the wife has contributed to the accumulation of the property of her husband, doing her part as a housewife, it would not be improper that she be allowed a reasonable amount as lump-sum alimony on retrial. (Emphasis added.)
In view of these holdings, we are of the opinion the chancellor improperly required Mrs. Bush to choose between lump sum and periodic payment alimony. This case should therefore be reversed and remanded for consideration of whether Mrs. Bush is also entitled to the periodic payment alimony she requested.
Secondly, Mrs. Bush argues the chancellor erred in failing to require Bush to post bond as security for the payment of sums owed her.
The record reveals that after Mrs. Bush encountered some difficulty locating Bush, he was served with process in California. Bush testified that although he planned to live in Houston, his job could require him to "go anywhere in the world ..." On cross-examination he agreed with defense counsel *782 that he had been "across the United States in the last month."
It is obvious from the record Bush had no intention of remaining in Mississippi; also evident was the possibility that his travels would make it difficult for Mrs. Bush to locate him and for any court to exercise jurisdiction over him.
Mississippi Code Annotated, § 93-5-23 (Supp. 1983), empowers the chancellor to "require sureties for the payment" of child support and alimony. Further, in Edmondson v. Ramsey, 122 Miss. 450, 465, 84 So. 455, 458 (1920), it is stated:
... It is also to be borne in mind that our chancery courts have power to issue the equitable writ of ne exeat republica even before an award of alimony, when a proper charge is made to the court that the defendant is about to leave the state or that he has said that such was his purpose. Under this proceeding, he may be required to execute a bond with sufficient sureties conditioned not to leave the state, or as security for the payment of the alimony which may be adjudged against him ...
Citing Watson v. Williams, 36 Miss. 331 (1858), the court stated further:
... A court without the power effectually to protect itself against the assaults of the lawless, or to enforce its orders, judgments, or decrees against the recusant parties before it, would be a disgrace to the legislation, and a stigma upon the age which invented it. 122 Miss. at 466, 84 So. at 458.
In both her pleadings and at trial, Mrs. Bush requested the court to require Bush to post bond. Bush's own testimony revealed he planned to leave Mississippi at the conclusion of the proceedings. Additionally, the record shows a judgment for arrearage in child support had been rendered against Bush and remained unpaid at time of trial. Based on the foregoing factors, our opinion is Bush should be compelled to post bond to secure payment of the sums he owes Mrs. Bush. This remedy is particularly appropriate in view of the fact that Bush owns no real property in Mississippi on which a lien could be imposed as security. Johnson v. Johnson, 189 Miss. 561, 198 So. 308 (1940).
Finally, Mrs. Bush argues the chancellor erred in not requiring Bush to pay one-half of the medical bills totaling $749.75 which had accrued at time of trial. She cites Cook v. Adams, 183 So.2d 925 (Miss. 1966), for the proposition that a husband and wife are jointly liable for the value of the wife's necessities.
Bush does not dispute the holding of Cook; instead he argues the chancellor intended Mrs. Bush to use a portion of the award of $7500.00 to pay these bills. However, the chancellor stated in reference to that award:

That is for her to use for storage costs, relocation or whatever else she is going to need. There is no doubt in my mind but what Mrs. Bush has got to re-establish herself, re-establish the income level at which she is going to live, and income on which she is going to live. (Emphasis added.)
Our opinion is the chancellor was contemplating prospective expenses, not those already incurred, when he made this award. We therefore are of the opinion Bush should be required to pay half of these medical bills.
For the foregoing reasons, reversal is required, and the case is remanded so that the chancellor may (1) consider the appropriateness of an award of periodic payment alimony; (2) require Bush to pay an additional $374.87 to be applied to the medical bills incurred at time of trial; and (3) direct Bush to post bond to secure payment of all amounts owed Mrs. Bush.
REVERSED AND REMANDED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
ROBERTSON, J., not participating.