RHINEHART *v.* RHINEHART.

[89 South. 152. No. 22035.]

DIVORCE. *Court may decree alimony for support of wife and require bond to enforce performance, and may commit husband to jail unless bond given.*

Where a wife files a bill against her husband for alimony, the chancery court may decree alimony and require of the husband the giv'ng of bond with sureties to carry out the decree, and may order the husband committed to jail until such bond is

given, and the husband will not be entitled to be relieved of the imprisonment feature until he has, in good faith, sought aid in making bond and in carrying out the decree. *Edmonson v. Ramsey*, 122 Miss. 450, 84 So. 455, 10 A. L. R. 380, cited.

APPEAL from chancery court of Alcorn county.
HON. J. G. McGOWAN, Special Chancellor.

Action by Grace Rhinehart against Charlie Rhinehart. Judgment for plaintiff, and defendant appeals. Affirmed.

*W. J. Lamb*, for appellant.

The record in this case is undisputed that the appellant was committed to jail on the *ex parte* statement of the appellee in her original bill, which is as follows:

"That the said Charlie Rinehart is threatening to leave the jurisdiction of this court and unless he is prohibited from doing so, she verily believes that he will escape the jurisdiction of the court in order to defeat the action of the court in requiring him to take care of complainant."

On this *ex parte* statement the chancellor issued his *fiat* and directed that the appellant be committed to jail unless he gave bond in the sum of five hundred dollars, which he was not able to give, and on the first day of January, in compliance with the chancellor's *fiat,* he was committed to jail, where he has been ever since, and is now.

It is further undisputed that the appellant did everything that could be done to make this bond, and he could not make it. It is further undisputed that the appellant is absolutely without any means whatever of any kind, except what he is able to make by his daily labor, and the appellee alleges this fact in her original bill. It is undisputed that the appellant is only able to work about two or three days in the week, because of physical disabilities, and then only receives twenty cents an hour for eight hours' work. It is undisputed that the appellant is unable to make the one thousand dollar bond in order to obtain his liberty, as is decreed by decree of the court. It is undisputed and is alleged in the bill of appellee, that the ap-

pellant has nothing except what he makes by his daily labor, and has nothing with which he can pay alimony, except as he works and makes it by daily labor.

It will not be denied that as long as he is confined in the county jail he will not be able to work, and therefore not be able to comply with the terms of the decree of the court, then in the name of justice and reason, and in the name of everything that is right, how can the law compel this man to stay in jail and punish him by staying in jail, when the mere fact of keeping him in jail prevents him from doing the very thing that the court in its decree is requiring him to do. He can never get in any better financial condition as long as he stays in jail; he can never pay the alimony as long as he is confined in jail and prevented from working, for he has nothing with which to pay it, nor has his parents or relatives anything with which to pay it.

Then, what is the logical conclusion of this? It can only be one thing, to-wit, that he must stay in jail the remainder of his life and stay there because the court puts him where he cannot do and prevents him from doing the very thing the court is demanding he shall do. We think the application of this principle is in some respects similar to the principles of the Christian Religion, and that is that every sinner has the right to repent and is entitled to a reasonable time in which to show his sincerity.

Now, we respectfully submit to the court that every violator of the law is entitled to the right to reform and the court should give him a reasonable time in which to show that he has reformed, but in this case nothing of this kind has been done.

He was arrested on the bare, naked, indefinite statement of the appellee and required to give bond in sum of five hundred dollars, which he was not able to do, and was hence placed in jail on the first day of January, 1921, and was brought out of jail and his case tried at the March term, 1921, and the court with these facts before it, decree that he should give a bond in the sum of one thousand dol-

lars to comply with the decree of the court, when the record shows that it was impossible for him to give bond in the sum of five hundred dollars.

We find nowhere anything comparable to this, nor have we ever been able or ever remember of seeing anything equal to it, unless this condition exists in Russia—the land of Bolshevism, and we only know this by newspaper reports, which may be true or may not be true.

There is no possible chance of this appellant's financial condition to improve, with him confined in jail; there is no possible chance for him to comply with the terms of the court's decree. Then carry this to its logical conclusion, this man is doomed to solitary confinement the remainder of his life. The lucid picture described by Dante when he said,

"All hope abandoned to those who enter here."

We really think that the holdings of the court in this case under the facts of this case are so far beyond what this court says is the law that it does not need argument.

We respectfully submit to this court, that the sound and sane enunciation of law on this point was announced by this court in the case of *Ramsay* v. *Ramsay, supra.*

We respectfully submit that the fourth and fifth assignment of errors should be sustained and this appellant given his liberty.

*G. C. Moreland,* for appellant.

Upon the trial of this cause at the March term of the chancery court, 1921, the evidence was conclusive and undisputed that appellant had been in jail from January 1st, because he was unable to execute bond in the sum of five hundred dollars, that he had done everything he could to make this bond, but had failed.

It is alleged in complainant's bill that appellant has no property, he has no means of paying alimony except by his future earnings. He is absolutely unable to make bond in the sum of one thousand dollars as required by this de-

cree, and for which failure to make said bond he was committed to jail, where he now is. It is clear from this record that it is now and will ever be utterly impossible for appellant to make bond as required by this decree.

In the case of *Ramsay* v. *Ramsay,* 87 So. 491, SMITH, C. J. in delivering the opinion of the court used the following language: "The appellant's failure to comply with the decree directing him to pay alimony to the appellee placed him *prima facie* in contempt of court, and devolved on him the burden of proving his inability to make the payment directed, and had he failed to meet that burden, the court below would have committed no error in committing him to jail until he complies with its decree. But that burden was fully met by him, for it appears from the evidence without conflict, that he has no money at all and no means of obtaining any except by his own labor; this being true, he cannot pay the alimony or any part thereof until he earns the money necessary for that purpose, and if he should be confined in prison he will not, while there, be able, of course, to earn any money at all, so that to commit him to prison would defeat the purpose sought to be accomplished.

Under section 1673, Code of 1906, the court may, if need be, require sureties for the payment of the sum so allowed, to the wife as alimony, but when the giving of such sureties is ordered, the husband is not in contempt until he fails to obey the order, and not then if his failure to obey the order resulted solely from his inability to do so.

It is clear from the evidence that the appellant has been unable to give the bond required of him in the original decree and will be unable to give that required in the decree appealed from unless some friend should come to his relief and assume the obligation for him without security therefor, and such a friend he does not seem to possess. He should not have been committed to prison, either, until he shall pay the arrears of alimony or give bond required.

We respectfully submit that in the case at bar, it is shown beyond question that appellant is now and will ever be unable to make bond in the sum of one thousand dollars

conditioned on the performance of this decree; it is shown that he stayed in jail for more than two months before the final hearing of this cause because he was unable to make bond in the sum of five hundred dollars. The evidence is clear and undisputed that he has no means of paying alimony except by his future earnings, and of course while he is confined in prison he will not be able to earn any money at all, so that to commit him to prison only serves to defeat the purpose sought to be accomplished. He has been given no opportunity whatever to comply with the decree of the court in the matter of payment of alimony; on the contrary he was required to make a bond which all the the evidence showed he could not possibly do and, because he refused to make this bond, solely because of his inability to do so he was committed to prison, where he cannot ever comply with the orders of the court, for it is impossible for him to now earn any money to pay the alimony.

We respectfully submit that the opinion of the court in the Ramsey case is so clearly in line with the facts in this case, and with our contention that this case should be reversed and the appellant released from prison that we shall not further discuss this case.

*Jas. A. Cunningham,* for appellee.

The appellee is at loss to know how to write or what to say in response to appellant's brief. But we would submit that this case was heard in a regular way, and the chancellor passed upon the facts and saw proper to require this derelict husband to support a helpless wife, and issued his order accordingly.

If this should be found to be a reversible error, it appears that there would be very little sanctity left in the ties of matrimony; and also it would appear that a wholesome public policy sustained by our courts from time immemorial has been getting by under a misconception of the courts. To have held other than the trial court held in

this cause, it would appear to the writer to be a most monstrous disposition of the most sacred of rights.

We submit that the finding of the chancellor should be confirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant and the appellee were married on or about the 21st day of October, 1920, and the day following the said marriage the appellant left the appellee and contributed nothing toward her support, and the appellee filed a bill in the chancery court praying for an allowance of alimony alleging that the appellant is an able-bodied man without property, but able to work, and can earn from seventy-five to one hundred dollars per month, and, unless forced to do so, will contribute nothing to her support, and that the said Charlie Rhinehart is threatening to flee the jurisdiction of the court, and, unless prohibited from doing so, she verily believes he will escape the jurisdiction of the court in order to defeat complainant's right, and prayed a writ of *ne exeat republica* to prevent his leaving the jurisdiction of the court, and prayed for attorney's fees and alimony. The writ *ne exeat* was issued on the chancellor's *fiat* requiring the appellant to give bond in the sum of five hundred dollars conditioned that he remain within the jurisdiction of the court, and the appellant, failing and refusing to make the bond, was committed to jail. The appellant answered the bill admitting that they were married on October 21st, but denies that they were lawfully married, and says that he married her because of threats and coercion on the part of the father of the complainant, and alleged that the brother of the complainant went with him to Corinth and forced him to procure a marriage license and marry the complainant, that in addition to those threats an affidavit was made against the defendant, and that he was under bond on a charge of bastardy, and that he left complainant as soon as he was freed from the force and threats

of said parties. It further alleged that he was unable to work, and admits that he will not support complainant unless compelled to do so. The defendant made his answer a cross-bill and prayed for a dissolution of the marriage.

On hearing the proof supported the allegations of the bill, and the chancellor awarded alimony to the complainant and denied the defendant relief under his cross-bill and ordered the defendant, who is appellant here, to pay the appellee one hundred and twenty dollars per annum for a period of twenty-one years, the first payment of sixty dollars to be made on June 21, 1920, and the next payment January 1, 1921, and a like sum at the end of each succeeding six months, and ordered the defendant to execute a good and valid bond in the sum of one thousand dollars conditioned for his faithful compliance with this decree, and that the defendant Rhinehart be held in jail until he shall execute such bond, and that he pay all costs, from which judgment this appeal is prosecuted.

It is contended by the appellant that he is entitled to a reversal of the cause because it was error to order his committal to the jail until the bond was executed, relying upon the case of *Ramsay* v. *Ramsay*, 87 So. 491.

We think the case before us is governed by the principles announced in *Edmonson* v. *Ramsey*, 122 Miss. 450, 84 So. 455, 10 A. L. R. 380. In the *Ramsay* v. *Ramsay Case,* which was a subsequent appeal, the proceeding was a contempt proceeding for failure to pay the alimony awarded, and the husband in that case made a showing of his inability to make the bond or to pay the alimony, and also that his wife was earning money from her own labor. It was shown that he could not make the money because he had nothing but his labor, and that, as he was kept in jail and could not make bond, he was unable to pay the money ordered to be paid.

In the case just before us there is no showing of any effort to make the bond or to pay the money. Before the appellant can be discharged from the order of the chancellor he must have in good faith attempted to comply

with the decree by making the bond. · The record fails to show that he ever applied to any person to sign his bond or to give him employment, or any attempt to comply in good faith with the order of the-court. The alimony is very small, and it is manifest that any man who is able to work and who is not more than twenty-two years old could secure employment and pay this sum if he were willing to do so. The proof shows, and the chancellor found, that the complainant could earn from one dollar and fifty cents to two dollars per day as a laborer. The chancellor found the facts in accordance with the contention of the appellee, and the evidence amply warrants such finding. Under the case of *Edmonson* v. *Ramsey, supra,* the chancellor had full jurisdiction to make the order on the facts in the record, and the judgment will be affirmed.

*Affirmed.*