JOHNSON *et al. v.* JOHNSON.

(In Banc.   Oct. 28, 1940.)

[198 So. 308.   No. 34253.]

Gerald **W. Chatham,** of Hernando, for appellants.

564

Holmes & Bowdre, of Hernando, for appellee.

566

**Griffith, J.,** delivered the opinion of the court.

Appellee filed her bill in the chancery court for divorce, alimony, and custody of children. The sworn bill alleged that the wife owned no property of her own and that the husband had none except some live stock of no considerable value, and that the husband had declared his purpose to sell this, pocket the proceeds and forthwith depart from the state. A writ of ne exeat was prayed, and the writ was ordered by the chancellor. The ne exeat bond was given by the defendant with appellants as sureties, the conditions of the bond being in accord with the order and reciting as follows: ''The condition of this bond is that the said defendant Bankston Johnson, will

appear before the Chancery Court of DeSoto County, Mississippi, at its regular September term 1939, and from term to term during the pendency of said cause, and shall remain within the jurisdiction of said Court, and make himself amenable to all orders and process of said Court during the pendency of said suit,'' etc.

At the next September, 1939, term a decree of divorce was granted to the wife with custody of the children; and it was decreed that the defendant husband pay to the wife for the support and maintenance of the children the sum of $12.50 per month, beginning October 15, 1939, and continuing until the further order of the Court. Nothing was said in the decree about the ne exeat bond.

The defendant failed to make payment, as required by the decree, and on November 10, 1939, the complainant filed her petition praying that the defendant be compelled by process in contempt. Citation was ordered on this petition, and the defendant appeared and answered at the time and place designated in the citation, when and where a hearing was had, at the conclusion of which the chancellor made an order adjudging the defendant in contempt but gave therein a period of thirty days thereafter within which the defendant might purge himself by paying the alimony installments due up to and within that period. The defendant continued in default, and about thirty days after the expiration of the period last aforesaid, complainant filed her second petition reciting the default aforesaid and praying that the contempt order be enforced. On this petition a further citation was order issued to the defendant returnable at a later day, but when the sheriff undertook to serve the process on the defendant he could not be found; and it is admitted that the defendant had gone to another state, where he remained for about four weeks.

Thereafter complainant filed her third petition, reciting the facts as above outlined, and prayed a summons returnable to the regular March 1940 term of the court against the defendant and also against the sureties on

his ne exeat bond. This summons was served, and at the term the sureties appeared, surrendered the defendant, and were relieved of their bond, save that because of the aforesaid breach thereof a decree was entered upon the bond and against the sureties, not in the full sum of the bond but for $74.20, the amount of the arrearage up to the date of that decree; and from this the sureties appeal.

The writ of ne exeat and its appropriate enforcement were well established features of the processes in chancery when that court was instituted in this state, and none of its effectiveness has ever been attempted to be modified by statute in this jurisdiction.

The office and object of the writ is to detain the person of the defendant within the state in order that he may remain amenable to the processes of the court during the pendency of the cause and may be compelled personally to perform the orders and decrees of the court, either interlocutory or final, where a personal performance thereof by him is essential to the effectual preservation and enforcement of the rights of the complainant in the cause. It is issuable, but only, in a case where the right of the complainant against the defendant is coupled with a positive personal duty on the part of the defendant, and which duty no other person can be compelled effectually to perform.

The above statement of its offices discloses its applicability and essential usefulness in alimony cases where neither the husband nor the wife has any property and the alimony must be paid by the husband out of his earnings from employment, and when it is definitely averred and shown that the husband is about to depart beyond the jurisdiction of the state to avoid compliance with his positive personal duty. And its availability in such cases has been put beyond the reach of further question by the rulings of this Court in Edmonson v. Ramsey, 122 Miss. 450, 465, 84 So. 455, 10 A. L. R. 380; Rhinehart v. Rhine-

hart, 126 Miss. 488, 89 So. 152, and Muckelrath v. Chezem, 184 Miss. 511, 186 So. 621.

And all the authorities upon the direct question are to the effect that no notice of the application or of the purpose to serve the writ is necessary, for the obvious reason that such a notice would enable the defendant to depart before the writ could be served, and thereby defeat the very object of the writ. And it can no more be said that in this there is an infringement upon due process than to say that a sheriff must first give advance notice to a defendant in an indictment that he expects to arrest him at a certain time, or to the respondent under a search warrant that the search will be made at a stated time and place.

There is no hard and fast form of the writ, or of the bond to be given thereunder. The bond may be so ordered and so worded as to secure the real objects and offices of the writ as hereinabove stated. The quoted bond required and given in the case at hand was such a bond and its terms were authorized and valid. And, as expressly held in the Muckelrath case, such a bond is more than a mere bail bond. It is not discharged when the principal appears and the final decree is entered. As said in that case quoting from the Edmonson case [122 Miss. 450, 84 So. 459, 10 A. L. R. 380]: "the object of the writ of ne exeat is to detain the person of the defendant in order to compel him to perform the decree of the court in those cases where his departure would endanger the rights of the complainant or prevent the effectual enforcement of the order of the court."

The language of our Court in the cited cases is, therefore, in accord with the rule as stated in the text books on the subject that such a writ and the bond thereunder is not a mere provisional or interlocutory remedy expiring at the entry of final decree, but that its object is to secure the presence of the party in order that the decree may be executed or enforced. The leading case on this point is Lewis v. Shainwald, C. C., 48 F. 492, 499. In fact,

the writ in actual practice is more often issued after decree and for its enforcement. The few cases in other jurisdictions holding that the writ and bond expire on the rendition of the final decree are based on statutory provisions and are of no persuasiveness in this state.

Immediately upon the service of the writ or at any time thereafter in term time or in vacation, the defendant, if not in contempt, may move to discharge or modify the writ or the bond upon showing: (1) That there was no allegation of sufficient facts, or, if alleged, that such facts did not exist at the time the writ was issued which would justify the issuance; or (2) that the basic facts have ceased to exist, or (3) that other facts have arisen which make the discharge or modification just or proper. The sureties may be released at any time upon proper petition and the surrender of the principal. But until the appropriate step is taken to discharge or modify the writ or bond, the failure so to do must be treated as a confession that the facts existed and still exist which authorized the writ and bond, and both will remain in force until there is performed all that the defendant is required under the decree to do as a positive personal duty and which no other person can be compelled effectually to perform; and, therefore, there is no sound basis for the complaint that there is anything unreasonable or arbitrary in the rule or that there is a deprivation of the personal liberty of the defendant, a term which must be understood as liberty under the law, not a liberty which demands the right to disregard and go free of the character of personal obligation with which we are here dealing.

The argument is made that there was no power to proceed in vacation in the enforcement of the alimony decree—that this could be done only in term time. This defendant was ordered in the decree to pay the alimony in monthly installments. He contemptuously failed to do so, and in vacation there was the stated proceeding to punish for contempt. The power to do so in vacation

is expressly conferred by Section 367, Code 1930, and this power is not confined to injunction cases, as contended, but expressly includes "any other order, decree, or process of the court."

The facts of the present case are that in the progress of the effort to enforce the decree by way of process in contempt, the defendant had admittedly gone beyond the limits of the state, so that citation could not be served upon him, he did not remain amenable to the processes of the court, with the result that his bond was thereupon breached. The sureties were thence properly cited to show cause why they should not stand in judgment for the penalty of the bond. They showed no valid cause for avoidance, and they are not in a position to complain that the court adjudged against them a less sum than the penalty of the bond.

Affirmed.

**Ethridge, J.,** delivered a dissenting opinion.

I am compelled to dissent from the holding of the majority in this case, which is too important to pass by unnoticed, or to silently concur in the result of the affirmance.

This is an appeal by the sureties on the bond of Bankston Johnson, arrested on a writ of ne exeat republica, issued on the fiat of the judge of the Chancery Court of DeSoto County, Mississippi.

The appellee, Mrs. Ora Lee Johnson, was complainant in the suit against Bankston Johnson for a divorce dissolving their marriage, and for the support of herself and two minor children. The bill in reference to the ne exeat writ alleged: "Complainant would show further that the defendant has threatened to sell all of his property and put the proceeds of the sale in his pocket and abscond from the State of Mississippi, and beyond the jurisdiction of the court, where he cannot be reached by the process of this court, and be required to comply with

such orders as the court may make. She has no property of her own of any consequence, and she is unable herself to decently support said children and rear them properly without help, and she is unable to hire a lawyer to represent her in this litigation to protect her legal rights."

In her bill she prayed for the writ of ne exeat republica in the following language: "And with the filing of this bill the complainant is now making motion, to be heard forthwith by the Chancellor, as per the facts set forth in the affidavit hereto attached, for the issuance of the most gracious writ of ne exeat republica against the defendant so as to prevent him from departing from this court's jurisdiction, and so as to detain the person of this defendant in this state in order that he may remain amenable to the jurisdiction of this court during the pendency of this cause, and so that he may be compelled to personally performed the orders and decrees to be rendered by the court, either intelocutory or final, such being necessary to the effectual preservation and enforcement of the rights of the complainant in this cause."

The affidavit to the bill, after stating that it was not filed by collusion for the purpose of obtaining the divorce, and for other relief, and that all facts set out therein were true as stated, continued: "And that the defendant has threatened to and is about to remove himself and his property out of the state of Mississippi, and beyond the jurisdiction of this court, so as to avoid complying with and performing such orders and decrees of this court as may be rendered by the court touching alimony and support of the complainant and the support of the complainant's minor children."

The court issued its fiat as follows: "To the Clerk of the Chancery Court of DeSoto County, Mississippi: Issue the writ of ne exeat republica as prayed in the foregoing bill directed to the sheriff or other lawful officer of DeSoto county, Mississippi, directing him to arrest the defendant, Bankston Johnson, and place him in the county jail, unless said defendant shall enter unto a bond with

good and sufficient sureties in the sum of $300.00, payable to the State of Mississippi, conditioned that such defendant shall appear before the Chancery Court of DeSoto county, Mississippi, at its September term, 1939, and from term to term during the pendency of the above styled cause, and conditioned that the defendant shall remain within the jurisdiction of said chancery court and make himself amenable to all orders and process of this court during the pendency of the above styled cause.''

The writ was issued by the clerk in compliance with the above fiat, and the said Bankston Johnson was arrested thereunder, and gave bond with his father and uncle as sureties thereon. There was no notice prior to the writ or fiat for Bankston Johnson to appear and show cause preliminary to the issuance of the writ, or to be heard on the question as to whether he should be required to execute said bond or not. The writ was issued without notice to Bankston Johnson, and without hearing on whether or not it should issue, and without opportunity, before executing the bond, to be heard upon matters pertaining thereto.

The writ was issued on the 22nd day of July, 1939; it required the giving of bond for the said Bankston Johnson to appear at the September term, 1939, of the Chancery Court. The decree entered at that term was dated September 27, 1939; so that more than two months intervened between the issuance of the writ of ne exeat and the decree. The writ was shown by the sheriff's return to have been served on the 25th day of July, 1939, and bond was given, which recited: ''But the condition of this bond is that the said defendant, Bankston Johnson, will appear before the Chancery Court of DeSoto county, Mississippi, at its regular September term, 1939, and from term to term during the pendency of said cause, and shall remain within the jurisdiction of said court, and make himself amenable to all orders and process of said court during the pendency of said suit, then this bond shall be null and void; otherwise of full force and effect.''

574

The said Bankston Johnson remained within the jurisdiction of the court until the trial of the case on its merits, and then thereafter until some time in January, 1940, when he went to Memphis, Tennessee, and engaged in work there. He filed an answer to the bill, which was sworn to on the 2nd day of September, 1939; but by permission of the court on hearing the answer was withdrawn, and the case was heard on bill, process and proof, the decree reciting that the defendant had withdrawn his answer by leave of court. The decree then recited that the defendant was properly before the court by service, and that he having failed to appear and defend the suit, and the court having heard the bill and proof, ''does order adjudge and decree that the complainant is entitled to the relief prayed in her bill, and it is therefore ordered, adjudged and decreed that the bonds of matrimony now existing between the complainant, Mrs. Ora Lee Johnson, and the defendant, Bankston Johnson, are dissolved, and that the claimant be granted an absolute divorce from the defendant. And on proof, it is ordered that the temporary custody of the minor children of said parties, to wit: Barbara Jane, born January 15, 1937, and Minnie Rae, born June 8, 1938, be and the same is hereby awarded to their mother, the complainant, until further order of court. And it is further ordered that for the support and maintenance of said children that the defendant, Bankston Johnson, shall pay direct to the complainant, Mrs. Ora Lee Johnson, the sum of $12.50 beginning October 15, 1939, and a like sum thereafter on the 15th day of each succeeding month until further order, and until further orders the defendant is granted the right of reasonable visitation of said children. And it further ordered that the defendant be taxed with all costs of this suit, for which let execution issue.''

It will be noted from the decree that the defendant was not ordered to give a bond to remain in the jurisdiction of the court thereafter, or for the performance of the terms of the decree or other orders of the court, as the court

might have required under section 1421, Code of 1930. It is true, the court could have made such an order at any subsequent term of the court, or at any subsequent term could have proceeded against the defendant by attachment or imprisonment until the decree should have been complied with, or else reasonable excuse for non-performance made to the court. It seems to me that the decree merged all previous proceedings, and set forth all the things required of Bankston Johnson; and that when the court met, and the case was heard on its merits, the sureties had performed their obligation, it being conceded that Bankston Johnson was then within the jurisdiction of the court, and amenable to its orders or processes.

But on the 10th day of November, 1939, Mrs. Ora Lee Johnson filed a petition with the Chancellor in vacation, setting forth that Bankston Johnson had not complied with the decree, by paying the money as directed therein; and prayed that citation to the defendant be issued to appear before the Chancellor at any time and place to be fixed by him, to show cause why he should not be adjudged in contempt of the order of the court, and punished therefor.

On the filing of this petition with the Chancellor he issued an order to the clerk of the Chancery Court, directing that Bankston Johnson appear before the court at twelve o'clock, noon, Saturday, December 2, 1939, in chambers at the courthouse in Holly Springs, Mississippi, to show cause, if any, why he should not be adjudged in contempt. Summons was issued thereon for Bankston Johnson, but not to the sureties, to appear at the place and time fixed, and answer the petition and show cause why he should not be adjudged in contempt. This summons was served on November 18, 1939, on Bankston Johnson, and he filed his answer thereto, alleging that on the 20th of November he was injured in an automobile accident, which caused him to be incapacitated for work, and was still incapacitated; that prior to that time he had been unable to find employment and earn sufficient

money to pay for the support of his children; that he was not in the attitude of trying to evade the order of the court—that on the contrary, he realized his responsibility to his children, and if permitted to do so, would continue to seek employment, or to devise ways and means of supporting them; that he had been offered a job outside of the state, but had been advised that he could not leave the state, in view of which fact he had been unable to meet the requirements of the decree. He lacked an education, and had been compelled to make a living by farming and as a day laborer; and since all crops had been gathered, he had been unable to find work by means of which he could earn money; that but for his father's providing meals for him, he would not have sufficient food himself.

On this proceeding in vacation the Chancellor entered an order adjudging that the defendant had neglected, without just cause, to pay to complainant the sum of money provided for the support of his minor children; that he was then in arrears in the sum of $20, and adjudged him to be in contempt of court. The Chancellor did not then penalize the defendant, but required that within thirty days he should pay the sum of $20 then due, and the installment of $12.50 which would be due on December 15, 1939, making a total of $32.50 to be paid on that date, the imposition of penalties to result on failure to comply, in the discretion of the Chancellor.

The decree then alleged that the writ of ne exeat was still in force, and that if the defendant wished to seek employment beyond the jurisdiction of the court he might do so, upon first executing a bond in the penalty of $200, to be filed and approved by the clerk of the court, with good and sufficient sureties, conditioned upon compliance by the defendant with such orders as the Chancellor might make; and taxed Bankston Johnson with costs of the hearing.

On January 20, 1940, Mrs. Ora Lee Johnson filed another petition before the Chancellor, alleging that the defendant was then in default in the sum of $45 on the

support ordered by the Chancellor; that he had not paid the complainant anything, or made any contribution to the support of the children besides $5 paid in the month of November, already reported to the Chancellor; that the children were in absolute need, and but for the kindness of friends and members of the family would have suffered; and prayed for a mandatory proceeding to enforce the orders of the judge theretofore granted, with such penalty as might be necessary.

Thereupon, in vacation the Chancellor ordered process to issue for the appearance of the defendant before him on February 3, 1940, at twelve o'clock, noon, in chambers at Holly Springs, with any witnesses he might desire to be present. The summons was placed in the hands of the sheriff, who made this return: "I have executed the within writ this the 27th day of January, 1940, by personally making a diligent search for the within named Bankston Johnson and he could not be found within the bounds of DeSoto county."

A petition was thereupon filed by Ora Lee Johnson that process be issued for Bankston Johnson, and cor D. H. and J. M. Johnson, sureties on the original bond, to show cause why Bankston Johnson should not be punished for contempt, and why judgment should not be rendered against the sureties on the bond. Thereupon, on March 18, 1940, summons was issued for Bankston Johnson and his sureties to appear before the Chancery Court of DeSoto County on the fourth Monday of March, 1940, to answer the petition of Mrs. Ora Lee Johnson, and to show why Bankston Johnson should not be punished for contempt of court; and why judgment should not be rendered against the sureties under the terms of the bond. The sheriff's return showed personal service on each of the defendants on March 18, 1940.

Thereupon, the sureties D. H. and J. M. Johnson, filed an answer to the petition, admitting that on September 27, 1939, the court granted the decree above mentioned, at the regular term, and that the decree directed Bank-

ston Johnson to pay to the complainant the sum of $12.50 per month, beginning October 15, 1939; they denied the allegation that $75 was then due; denied that Bankston Johnson could not be found—stating that except for a short visit to Memphis, Tennessee, so far as they knew and believed he had been in and about DeSoto County— and denied that he had been dodging process, but, on the contrary, he had been seen from time to time on the streets of Hernando shortly before and after the complaint was filed against him on January 25, 1940. They denied that the writ of ne exeat republica was still in effect to the extent that it could be enforced against them in the sum of $300, or any other amount. They then alleged that they became sureties on the bond because D. H. Johnson and J. M. Johnson were the father and uncle of Bankston Johnson, respectively, which would have been done by any father and uncle under the circumstances, to prevent his incarceration in jail. They stated that until service of summons on them they had not been advised that they would be required to produce the defendant before the court at a designated time and place, but they did produce in court, and turn over to the sheriff of DeSoto County the defendant, Bankston Johnson, praying to be released by proper order of the court from any further liability as sureties on his ne exeat bond.

The matter was then tried before the Chancellor at the regular term, 1940, of the Chancery Court. The evidence in the case was not taken down by a court reporter, but the court was requested to make a finding of fact and law, which it did, to the effect that the proceedings were substantially right; and that Bankston Johnson had only paid $5 on the support of his children ordered by the decree of the court. It recited the proceedings in vacation before the court, and that it then appeared that Bankston Johnson several times had in his possession substantial amounts of money since the decree was awarded, most of which he had paid to his father on an alleged indebtedness; that he had paid some other creditors; and

the evidence at the regular hearing, then being had, showed that he at least had the sum of $16 from the government for some reason; and that instead of paying it on the alimony or support of his children, he had paid a doctor's bill, and one at a filling station. At the hearing in vacation at Holly Springs the defendant was represented by counsel; he was adjudged in contempt of court, but the Chancellor allowed him time in which to purge himself thereon; and set forth the other hearings mentioned above, and that the testimony before the Chancellor on the stated hearing showed that Bankston Johnson was at the time of the vacation hearing, January 27, 1940, in Shelby county, Tennessee, and adjudged him to be in contempt and also rendered a judgment against the sureties on the ne exeat bond originally given, in the amount of alimony then in arrears, from which judgment this appeal is prosecuted.

I think the fiat of the Chancellor, directing the writ ne exeat republica to issue, and the said Bankston Johnson to be imprisoned, or give the required bond, has the effect only of holding the defendant to appear at the regular term of the court thereafter, and to stay within the jurisdiction of the court, and be amenable to its process and orders during the pendency of the suit; and that the bond did not embrace a requirement that the sureties would discharge and pay any judgment that might be rendered on a hearing of the case on its merits. Indeed, I think it would be impossible for the court to direct, without notice and hearing, that the defendant execute a bond to perform a judgment of the court thereafter to be rendered. The writ of ne exeat is in the nature of a bail bond. It is a restraint upon the personal liberty of the party against whom it is issued, and should not be issued without opportunity immediately to be heard by the person upon whom the process is served, and who is arrested under its terms. Section 14 of the Mississippi Constitution provides that no person shall be deprived of life, liberty or property except by due process of law, and the

same liberty is secured to the citizens of every state, without reference to state action, by the 14th Amendment to the Constitution of the United States. Among the liberties of the citizen is the right, not merely to have freedom from physical restraint, and to move about from place to place unrestricted, except for such lawful restraint as may be sanctioned by due process.

In Cooley's Constitutional Limitations (8 Ed.), page 710, it is said: "Sr. William Blackstone says, personal liberty consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due process of law. (1 Bl. Com. 134). It appears, therefore, that this power of locomotion is not entirely unrestricted, but that by due course of law certain qualifications and limitations may be imposed upon it without infringing upon constitutional liberty. Indeed, in organized society, liberty is the creature of law, and every man will possess it in proportion as the laws, while imposing no unnecessary restraints, surround him and every other citizen with protections against the lawless acts of others."

Due process of law requires notice and opportunity to be heard before a judgment is rendered. Mr. Cooley, in his Constitutional Limitations (8 Ed.), page 736, says: "Perhaps no definition is more often quoted than that given by Mr. Webster in the Dartmouth College Case: 'By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities, under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not therefore to be considered the law of the land."

He continues: "The definition here given is apt and suitable as applied to judicial proceedings, which cannot be valid unless they 'proceed upon inquiry' and 'render

judgment only after trial.' It is entirely correct, also, in assuming that a legislative enactment is not necessarily the law of the land. The words 'by the law of the land,' as used in the Constitution, do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction absolutely nugatory, and turn this part of the Constitution into mere nonsense.''

. By section 23 of the State Constitution, and the similar provision of the federal Constitution, Amend. 4, no person can be seized or arrested without an affidavit charging, in apt terms, so as to give specific notice of the cause of the arrest; and when arrested under the other provision of the Constitution, there must be a speedy opportunity to answer the charge, and to have a speedy trial. All the provisions of the Bill of Rights are held by this Court, and by the United States Supreme Court, to be liberally construed in favor of the citizen, whose liberties are guaranteed. The writ ne exeat republica comes to us from common law, and is not regulated by statute, except that it is subject to the liberties guaranteed in the Constitutions of the states, and of the nation; and the writ is necessarily restrained from its ancient usage by these provisions.

Construing these constitutional provisions, it is clear that a writ so vitally affecting the rights of a citizen should give an opportunity to be heard speedily, and that no charges can be brought against him without an opportunity to appear at a time reasonably early, to show cause why his liberty should not be restrained, and why he should not be compelled to execute a contractual obligation, coerced from him by an arrest on an ex parte proceeding.

I think, therefore, that it must be that the process, when issued without a hearing, should direct the defendant to appear speedily before an appropriate authority, to show cause, if he can, why the writ should not restrain him, and why he is not subject to be placed thereunder. Issuing the writ without notice, and requiring as a condition of

liberty the execution of a contractual obligation before hearing to do whatever thereafter may be adjudged, is clearly to place the defendant under duress and coercion such as would render the obligation void. The proper practice is, on application for the writ, supported by appropriate allegations and sworn affidavits, for the court to issue the writ directing the defendant to be arrested and brought speedily before the court or judge, to show cause, if any, why the writ should not issue.

The law of this state does not impose an absolute obligation upon a parent or husband to support a child or wife. There is a legal obligation as to the children, which may be answered by showing inability on the part of the parent, and that there is property belonging to the child from which its support may be applied by the court or its guardian. As to the wife, the obligation of the husband to support her is dependent upon her remaining in the home and performing her duties there, unless she is driven from the home by the husband, or by his mistreatment of her. The party sought to be restrained by the ne exeat should be allowed speedy hearing, so as to render the duration thereof for a reasonable time. Furthermore, the defendant may show that he is not intending to depart from the jurisdiction; and that he has sufficient property to assure the performance of his duty.

The foregoing reasons, I think, are sufficient to show that the writ and the bond taken thereunder are temporary and provisional, and that when the defendant executed the bond, and remained within the jurisdiction of the court until the hearing, the bond ceased as an obligation with the rendition of the decree, and the adjournment of the court. I know that the laws in the various states are confused, and that there is diversity of authorities, and apparently a failure on the part of the courts in some cases to take into consideration the limits placed on restraint of liberty, and the requirements of due process in reference thereto.

In May v. May, 146 Ga. 521, 91 S. E. 687, the Supreme

Court of Georgia held that: "The writ of ne exeat issues to restrain a person from leaving the jurisdiction of the state; and where the principal in a ne exeat bond appears and defends the suit against him for divorce and alimony, and is within the jurisdiction of the court when the final judgment is rendered against him, subject to the processes of the court, such writ becomes functus officio, and upon motion the court should declare the bond canceled and the sureties therein discharged." In this case the court entered into an interesting and instructive discussion of the principles of a ne exeat bond. The court in the subsequent cases of Lomax v. Lomax, 176 Ga. 605, 168 S. E. 863, and Roberts v. Roberts, 176 Ga. 672, 168 S. E. 867, adhered to these views.

In the case of D. Ginsberg & Son v. Popkin, 285 U. S. 204, 52 S. Ct. 322, 324, 76 L. Ed. 704, the United States Supreme Court had before it this question under the statute of the United States bearing on the issuance of the writ. In the course of the opinion the Court said: "The writ is a restraint upon the common right of movement from place to place within the United States and upon emigration. It has been abolished in some states and its use is largely regulated and restricted by statute in others. And section 261 of the Judicial Code [28 U. S. C. A., Sec. 376] strictly governs the granting of the writ in federal courts. Section 9 (b) [11 U. S. C. A., Sec. 27(b)] provides a substitute for and so excludes the use of the writ against bankrupts. As respondent is not a bankrupt, that subdivision does not authorize his arrest or afford him protection." This is unquestionably a writ against the common right recognized in the Constitution as one of the liberties of a citizen—the right to move from place to place without unreasonable restraint.

Mr. Black, in his Constitutional Law (4 Ed.), page 521, says: "Personal liberty consists in the power of locomotion, of changing situation, of removing one's person to whatever place one's inclination may direct, without imprisonment or restraint unless by due course of law, and

also it includes the right of bodily integrity, that is, freedom from physical injury or degradation. But the right of personal liberty is limited, in accordance with law, in so far as may be necessary for—(a) the preservation of the state and the due discharge of its functions. (b) The securing of the rights of each member of the community against the others. (c) The due regulation of the domestic relations."

In construing the term "liberty," as used in the Federal Constitution, Fourteenth Amendment, the Federal Supreme Court, in Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 431, 41 L. Ed. 832, at page 431 of the Supreme Court Reporter, says: "The 'liberty' mentioned in that amendment means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned."

The writ of ne exeat is therefore certainly a restraint upon the right of the citizen to go where he will, and work where he will. It is true that for proper reasons this liberty may be abridged, but no further than the necessity of a case requires.

In Griswold v. Hazard, 141 U. S. 260, 11 S. Ct. 972, 979, 999, 35 L. Ed. 678, the Court entered into a full discussion of the uses of the writ ne exeat, and in that case reformed a bond stipulating by its terms for the performance of a judgment thereafter to be rendered, on the ground of mutual mistake, the primary purpose of the bond being to insure the presence of the defendant at the trial, this being in the nature of a bail bond; and upon the execution of the bond the defendant should be re-

leased. The opinion is too lengthy to be here set out, but it is very instructive. In the course of the opinion, however, the Court stated: "As, therefore, Durant could have filed his answer, and, conformably to the general rule, have obtained a discharge of the writ upon giving bond, with surety, that he would be amenable to the orders and process of the court; as he could not, consistently with his engagements, remain in Rhode Island long enough to have an answer prepared, and to move for the discharge of the writ, upon sufficient bond to be by him given; and as Hazard and his counsel expressed a desire that Durant should not be held in custody over Sunday, —what more natural and equitable than that the parties should, *by consent*, bring about that which Durant must have understood from Bradley that he could accomplish, through the orders of the court, namely, have a bond executed with surety compelling his presence in the state when required by the orders of the court, or subjecting his sureties to personal liability if he did not render himself amenable to its process? If the suggestion that Durant could file his answer and apply to the court for the discharge of the writ (of course, upon bond securing his amenability to the process of the court) had been adopted, the plaintiff would not have obtained a bond making the surety absolutely responsible, within the penal sum named in the writ and bond, for a money decree against Durant. It is therefore unreasonable to suppose that the parties separated Saturday night under an agreement that Hazard should have from Durant a bond that would subject his sureties to a larger responsibility than was involved in the suggestion made that Durant could obtain an order of court for the discharge of the writ."

In the case of People v. Sochet, 72 Colo. 531, 212 P. 832, 834, it was held that the provisions of a ne exeat bond are to be tested by the order therefor. If it contains unauthorized provisions they must be treated as surplusage. In the course of the opinion the Court said: "Assuming, without deciding, the legality of the arrest and the valid-

ity of the bond, we must uphold the judgment in this case. The conditions of the bond are to be tested by the order therefor. If it contains unauthorized provisions, they must be treated as surplusage. [Citing a former case.] The condition that Sochet would not go beyond the limits of the state or the jurisdiction of the court could not hold forever. It must be construed as extending only to the pendency of the action and such time after final judgment as was reasonably necessary for the enforcement thereof. . . . The provision that he would render himself amenable to the orders and processes of the court must be construed as applying only to orders and processes entered and issued prior to final judgment. The provision that he would render himself amenable 'to such processes as shall be issued to compel the performance of the final decree' must be construed as extending only to. such time after the entry thereof as would enable plaintiff, proceeding with reasonable diligence, to procure its enforcement. All these things the defendant did. He remained within the jurisdiction until final judgment. He made payments exceeding those required prior to final judgment. He remained within the jurisdiction of the court more than one year thereafter, giving plaintiff ample opportunity to enforce, by execution or proceedings in contempt, every order in her favor which the court had jurisdiction to enter.''

It will be noted from the quotations from the fiat that the writ of ne exeat, and the bond executed in this case, only required Bankston Johnson to remain in the jurisdiction of the court, and amenable to the process thereof, and the term at which he was to appear was fixed in the order and in the bond. Mr. Black in his Law Dictionary defines ''amenable'' as follows: ''Subject to answer to the law; accountable; responsible; liable to punishment (citing authorities). Also means tractable, that may be easily led or governed; formerly applied to a wife who is governable by her husband,'' that last not being applicable to this proceeding.

The bond cannot extend beyond its term, and this case does not cover an obligation by the sureties to pay such sums as may be adjudged against Bankston Johnson. It was provided in the bond to have him appear before the court, and to be amenable to its processes and orders, and not to leave the jurisdiction of the court. It would seem that a bond given for the appearance at a specified term of the court, and from time to time, would free the defendant from the obligation to remain in the jurisdiction of the court between the time of giving the bond and the time for his appearance; and that the requirement that he should remain in the jurisdiction of the court ad interim is unlawful and unnecessary. He was given a time to appear; he could not be required, without his consent, to have a hearing in vacation. In the order of the court fixing his obligations to his wife and children the court did not require that he should remain within its jurisdiction further. The bond became functus officio when the judgment was rendered and the term of court ended. An interesting case in this connection is that of Risser v. Hoyt, 53 Mich. 185, 18 N. W. 611, 618, in which it was held that the statute was unconstitutional, in that it failed to provide for notice to the parties concerned, for any means of giving·effect to its provisions. It is unconstitutional as violating (1) the limitations on judicial power, since it gives a judge at chambers power which only a court should exercise, in the final disposition of the debtor's property; (2) the provision which secures the right of trial by jury, since it looks to a summary disposition of cases which necessarily turn on questions of fact; (3) the prohibition against taking property without "due process of law;" (4) the prohibition against imprisonment for debt, in that it allows a circuit judge to issue the writ of ne exeat at discretion; (5) the prohibition against impairing the obligation of contracts, since it deprives creditors of their remedies.

In the course of the opinion it was said: "The proceeding is to be summary; the parties are to be heard, and

such evidence received as may be proper. The court or judge does not ascertain judicially that the debtor has forfeited his privileges, or that his creditors have a superior title to his property, and therefore it shall be taken from him. With certain limitations and exceptions, not necessary to be noticed here, because the proceedings authorized by this statute do not fall within them, 'these words, ''due process of law,'' cannot mean less than a prosecution or suit according to the prescribed forms and solemnities for ascertaining guilt, or determing the title to property. This language must be taken with the important limitation that the forms and solemnities required must be such as were essentially in existence at the time of forming the constitution as a part of the ordinary means of administering justice.' ''

Judge Cooley, then Chief Justice of the Supreme Court of Michigan, and author of Constitutional Limitations, filed a concurring opinion, in which he said: ''I have no doubt that if the act could be enforced at all some of the contested questions which might arise in any case would necessarily, at the option of the parties, be tried by jury, and it would be necessary to give the statute such a construction as would admit of such trial. But the framers of the act probably contemplated such a trial of some of such questions, though they have not expressly provided for it. The provision in the act for a writ of ne exeat, at the discretion of the circuit judge or circuit court, is unquestionably unconstitutional. Under it a debtor who was unable or unwilling to give bail might, at the mere will of the judge, be kept in jail indefinitely, and the authority thus to imprison him is plainly in conflict with the constitutional inhibition of imprisonment for debt. [Reciting authorities]. And much of the summary power which the act undertakes to confer upon the circuit judge sitting at chambers, it must be quite impossible to give any officer not at the time sitting as a court, where the constitution in terms vests the judicial power of the state in certain specified courts. Article 6, Section 1.

But if the constitutional objections in regard to judicial power to act were all to which the act was obnoxious, it is possible that in its main features it might be upheld and enforced through the circuit courts. An objection more plainly fatal is that the act gives no sufficient means whereby it may be enforced, and the rights of parties protected."

Judge Campbell concurred in the opinion of Judge Cooley, and also in the main opinion.

Clephane on Equity, Pleading and Practice, at page 138, discusses briefly the purpose of the bill and practice:

"This bill is filed in equity for the purpose of securing a writ preventing the defendant from leaving the jurisdiction. The bill should contain a recital of plaintiff's grievance in detail, the imminent danger of defendant leaving the jurisdiction, and any threats made by defendant to that end.

"The writ is in its nature a temporary and provisional remedy, and is not intended to operate as a perpetual restraint upon the defendant's selection of a residence, but only to insure his presence in court to respond to its decree." He then discusses the requirements of the bill for the writ.

Many authorities hold that the writ should not issue before judgment, and that was the rule at common law in England. Judge Sykes, in writing the opinion in the case of Edmonson v. Ramsey, 122 Miss. 450, 84 So. 455, 10 A. L. R. 380, said, arguendo, that the writ could issue before judgment, etc. That was not involved in the case, for the proceeding was under section 1421, Code of 1930, which is the same as in the former Code, referred to in that opinion; and his argument was not decisive of the issue then presented for decision, whether the court had the power to imprison a person under a proceeding for contempt, in failing to provide alimony in accordance with the decree of the court. That was brought forward and reannounced in Muckelrath v. Chezem, 184 Miss. 511, 186 So. 621. The power to issue the ne exeat in cases

like suits for alimony, where the court can coerce the person on a proper hearing, undoubtedly exists, subject to constitutional restraints; but no common law, or statutory provision, can overrule the constitutional rights of the citizen, giving him a right to be heard before judgment, and prohibiting his being deprived of life, liberty or property without due process of law. There are many cases dealing with the subject of ne exeat; and there are valuable notes in 8 A. L. R., page 327, et seq.; 14 Am. Dec. 560; 19 R. C. L. 1340; 45 C. J. 588, et seq.; and in Decennial Series Am. Dig., title Ne Exeat.

But taking all that has been said in all of the cases, it is manifest that the detention of a person thereunder must be reasonable, and that obligations cannot be imposed upon sureties beyond that required in the order of the court, and in the bond executed in pursuance thereof. The sureties here were not in default. The court could not proceed against them without so entering the decree at the September term, supra, without reserving in the decree the right to hear it in vacation. The statutes giving the Chancellor the power to decide cases in vacation do not embrace the power to hear and decide in vacation without the consent of the parties, a judicial question as to whether the defendant in an alimony suit is in contempt of court. Nor did it authorize proceedings in vacation, except as named in sections 320, 321, 322 and 323, Code of 1930. It has been said that this vacation proceeding is authorized by section 367 of the Code. But section 367 indicates in its heading, as well as in the context, that the power there conferred is dealing with an injunction. This section must be construed in connection with other statutes upon the same subject, and especially in connection with 741 of the Code, which gives to the Supreme, Circuit, Chancery and County Courts the power to fine and imprison any person guilty of contempt of the court while sitting, but the fine shall not exceed one hundred dollars for each offense, nor shall the imprisonment continue longer than thirty days.

And it proceeds to enumerate instances in which such powers may be exercised. This section is general, and is limited by its express terms to term time, or while the court is sitting. The sitting of court, of course, is in term time, unless specifically authorized in vacation.

Section 367 of the Code starts off by saying that a Chancery Court, or Chancellor in vacation, or judge granting the writ, shall have power to punish any person for "breach of injunction, or any other order, decree, or process of the court, by fine or imprisonment, or both." The "other order, decree, or process of the court" referred to are orders, decrees or processes issued in the injunction suit. The court, of course, in injunction matters has power to make orders, and to issue additional process when necessary for the purpose of hearing the cause. Construing section 367 with the other sections, it is clear to me that the court does not have the power to have the hearings in vacation; and, furthermore, the sureties cannot be affected, because no notice was served on them, and they were in nowise in default until called on in a regular and legal way.

For the reasons indicated I think the judgment of the court should be reversed and the sureties discharged. The principal in the bond did not appeal.

**Smith, C. J.,** delivered a dissenting opinion.

Without expressing an opinion on any of the other questions presented by this record, I am of the opinion that the decree of the court below should be reversed for the reason that the appellant Johnson met the condition of this bond when he remained within the jurisdiction of the court below until the final decree herein was rendered, thereby making himself "amenable to all orders and process of said court during the pendency of said suit." When the final decree herein was rendered, the suit was no longer pending within the meaning of the bond. The court below had the power in rendering this

final decree to require a bond from Johnson for the payment of the alimony awarded the appellee, but that power unexercised did not continue in force the obligation of the bond sued on.